\*FOR PUBLICATION\*

```
IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
              DIVISION OF ST. CROIX
              APPELLATE DIVISION
```

| | |
|---|---|
| GEORGE LOMBARDI, | ) |
| | ) D.C. CIV APP. NO. 2002/0153 |
| | ) Sup. CT. CIV NO. 0946/1992 |
| Appellant, | ) |
| | ) |
| v. | ) |
| | ) |
| VICTORIA WINGO, WILBUR B. SUFFECOOL, | ) |
| Appellees, | ) |
| | ) |
| AND | ) |
| | ) |
| COMMISSIONER OF FINANCE OF THE GOVERNMENT OF THE VIRGIN ISLANDS, | ) |
| Third-Party Appellee. | ) |

On Appeal from the Superior Court of the Virgin Islands

Considered: April 11, 2008
Filed: July 28, 2009

BEFORE:  **CURTIS V. GÓMEZ**, Chief Judge, District Court of the Virgin Islands; **RAYMOND L. FINCH**, Judge of the District Court of the Virgin Islands; and **JAMES S. CARROLL III**, Judge of the Superior Court of the Virgin Islands, sitting by designation.

ATTORNEYS:

**George Lombardi,** *pro se*
St. Croix, U.S.V.I.
    Appellant,

**Yvette Ross-Edwards, Esq.**
St. Thomas, U.S.V.I.
    Attorney for Appellee,

**Angela Tyson-Floyd, Esq.**
St. Croix U.S.V.I.
    Attorney for Third-Party Appellee.

**Memorandum Opinion**

**Per Curiam.**

**I. FACTUAL AND PROCEDURAL POSTURE**

This matter arises out of a tax sale of real property and concerns two related Superior Court orders. The first is a February 18, 1997 order denying Appellant's motion for summary judgment in an action for debt. The second is a September 6, 2002 order partially denying Appellant's summary judgment motion in an action for indemnification.

**A. Background**

On June 29, 1983, George Lombardi ("Lombardi" or "Appellant") was the prevailing bidder at a public tax auction sale of Plot 83 Estate South Slob ("property").[1] Lombardi paid $2,6000.00 for the property at the tax sale, $556.89 of which covered the delinquent taxes on the property. On May 11, 1984, the Virgin Islands Commissioner of Finance ("Finance" or Commissioner of Finance") issued Lombardi a certificate of purchase. On May 24, 1984, after the statutory one-year redemption period had expired, Lombardi recorded the certificate

---

[1] On November 10, 1972, Jaleh Grobien purchased Plot 83 Estate South Slob on St. Croix via warranty deed. Grobien paid taxes on the property until 1977, at which point she defaulted on her payments. As a result, the Government sold the property at the June 29, 1983 tax sale.

*George Lombardi v. Victoria Wingo et al.*
D.C.Civ.App. No. 2002/0153
Memorandum Opinion
Page 3

of purchase at the Recorder of Deeds in Christiansted, St. Croix.

Subsequently, Appellee, Wilbur B. Suffecool ("Suffecool" or "Appellee") made an offer to purchase the property. Suffecool submitted a document entitled "CONTRACT", in which he proposed a $19,000.00 purchase price.[2] Lombardi accepted the offer via letter dated May 6, 1985.[3] The parties memorialized their agreement by signing Suffecool's offer. Thereafter, Suffecool commenced with payments as agreed.

In late 1987, Jaleh Grobien, the former owner of the property whose tax delinquencies resulted in the June 1983 tax sale, decided to sell the property. Upon learning of the sale, Grobien contacted Lombardi to negotiate the property's return.

While Grobien and Lombardi were engaged in negotiations, Suffecool, who was making regular payments pursuant to his agreement with Lombardi, requested that the deed be made out to Appellee Victoria Wingo and/or her son, Kyle Wingo (the "Wingos").[4] Suffecool and Lombardi agreed to transfer the deed to the Wingos when the final installment payment on the $19,000

---

[2] The offer proposed an initial $4,000.00 down payment with the remaining balance to be paid in quarterly installments over approximately four years without interest.

[3] Also enclosed in the letter was a form quitclaim deed template that Lombardi planned to use as a guide at the closing of the sale. Via letter dated May 28, 1985, Suffecool agreed that the deed template was acceptable.

[4] Suffecool's request was made via letter dated July 20, 1988.

*George Lombardi v. Victoria Wingo et al.*
D.C.Civ.App. No. 2002/0153
Memorandum Opinion
Page 4

purchase price was made. On January 24, 1989, Suffecool made the final installment payment and on February 9, 1989, Lombardi transferred the property to the Wingos via quitclaim deed. The quitclaim deed was received for recording on February 13, 1989.

Thereafter, negotiations failed between Grobien and Lombardi. Grobien sued Lombardi, the Commissioner of Finance and the Wingos. In that action, Grobien sought to set aside the tax sale. Grobien argued that she did not receive notice, alleged deficiencies in the attachment and sale and challenged the validity of Lombardi's interest in the property.

The lawsuit resulted in the entry of summary judgment on April 3, 1990, in favor of Grobien and against Lombardi, Wingo and the Commissioner of Finance. In its April 1990 judgment, the Superior Court voided the tax sale to Lombardi and required Grobien to reimburse Lombardi $556.89 in taxes, penalties and costs due on the property, plus statutory interest from the date of the tax sale. The trial court further declared that the 1983 tax sale was "void and of no effect, with the title to remain in the name of Grobien." (App. 9; J.A. 20.) Lombardi unsuccessfully appealed the trial court's April 3, 1990 decision to this Court. *See Lombardi, et al. v. Grobien*, 765 F.Supp. 856 (D.C.V.I. 1991).

*George Lombardi v. Victoria Wingo et al.*
D.C.Civ.App. No. 2002/0153
Memorandum Opinion
Page 5

### B. February 8, 1997 judgment

On September 15, 1992, Victoria Wingo filed an action for debt against Lombardi in the Superior Court. In that action, Wingo sought to have Lombardi reimburse her the $19,000.00 purchase price paid by Suffecool. Lombardi filed an answer to Wingo's complaint and joined the Commissioner of Finance as a third-party defendant. By joining Finance, Lombardi sought indemnification and/or contribution against the Government for the $19,000 judgment against him, plus attorney's fees and costs incidental to the transfer of the property.[5]

On February 18, 1997, by summary judgment order, the Superior Court ruled on the Wingos' claim against Lombardi. The lower court held that Lombardi had a contractual duty to deliver a valid quitclaim deed to the Wingos. The court further reasoned that when the tax sale was voided, Lombardi did not have any right, title or interest in the property. Thus, Lombardi breached the parties' May 1985 agreement when he failed to deliver a valid quitclaim deed.(J.A. 17.) Applying the equitable theory of unjust enrichment, the trial court concluded that the Wingos were entitled to full restitution of the $19,000.00 purchase price.

---

[5] Lombardi also sought $2,043.11 representing the amount paid to the Government in excess of the tax debt, $403.50 representing the amount paid by Lombardi for the recording and stamp fees and other fees incidental to the transfer of property, plus interest, attorney's fees and costs.

*George Lombardi v. Victoria Wingo et al.*
D.C.Civ.App. No. 2002/0153
Memorandum Opinion
Page 6

Lombardi appealed the trial court's February 18, 1997 judgment to this Court.[6] On September 15, 2000, the Superior Court held that it did not certify its February 18, 1997 judgment as final and appealable pursuant to Fed. R. Civ. P. 54(b), because Lombardi's third-party action against the Commissioner of Finance remained pending. As a result, the trial court stayed the judgment against Lombardi pending the outcome of Lombardi's suit against Finance and further held that neither Wingo nor Suffecool could proceed to enforce the judgment against Lombardi until the claims as to all the parties had been adjudicated. (J.A. 118.)

### C. September 6, 2002 judgment

On September 6, 2002, the Superior Court partially granted Lombardi's motion for summary judgment against Finance. This judgment gave rise to Lombardi's second appeal. Here, the court concluded that there was no genuine issue of material fact that Lombardi was entitled to a reimbursement of the purchase monies from the voided tax sale. (J.A. 23-24.) The court awarded Lombardi interest on the purchase monies from the date of the tax

---

[6] On June 24, 1997, Lombardi voluntarily dismissed his appeal of the trial court's intermediate February 18, 1997 order and reserved his right to appeal the judgment when the order became final. (J.A. 113.) Lombardi's voluntary dismissal did not, however, address staying the judgment against him. (*See id.*) The court explicitly addressed this issue in its September 15, 2000 order.

*George Lombardi v. Victoria Wingo et al.*
D.C.Civ.App. No. 2002/0153
Memorandum Opinion
Page 7

sale to the date the sale was declared void.[7] (J.A. 27.)

However, the court denied Lombardi's claim for indemnification against Finance for the $19,000.00 purchase price paid by Suffecool. The court further denied Lombardi's claim for reimbursement of the stamp fees associated with the recording of the quitclaim deed and also denied his request for attorney's fees. On October 3, 2002, Lombardi filed this timely appeal.[8]

## II.   JURISDICTION AND STANDARD OF REVIEW

This Court may review the judgments and orders of the Superior Court in civil cases.[9] This Court exercises plenary review over the order denying summary judgment, and must "apply the same test that the lower court should have utilized." *Texaco Antilles Ltd. v. Creque*, 273 F. Supp. 2d 660, 662 (D.V.I. 2003).[10]

---

[7] The court ordered Finance to reimburse Lombardi $2,043.11 plus statutory interest at a rate of 12% from June 29, 1983 (the date of sale) to May 30, 1991 (the date the certificate of purchase was deemed cancelled), for a total of $3,999.51.

[8] Lombardi's notice of appeal specifies both the trial court's February 18, 1997 order and its September 6, 2002 order. (J.A. 133.)

[9] *See* Revised Organic Act of 1954 § 23A, 48 U.S.C. § 1613a. The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541-1645 (1995 & Supp.2003), reprinted in V.I. Code Ann. §§ 73-177, Historical Documents, Organic Acts, and U.S. Constitution (1995 & Supp.2003) (preceding V.I. Code Ann. tit. 1); V.I. Code Ann. tit. 4, § 33 (2001).

[10] A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

*George Lombardi v. Victoria Wingo et al.*
D.C.Civ.App. No. 2002/0153
Memorandum Opinion
Page 8

### III. DISCUSSION

#### A. Unjust Enrichment

In applying the theory of unjust enrichment, on February 18, 1997, the Superior Court held that the Wingos were entitled to full restitution of the $19,000.00 purchase price, because Lombardi was unable to deliver the property paid for and agreed upon. We are asked to decide whether the trial court erred in its determination.

The doctrine of unjust enrichment is an equitable remedy. *Flavor Pit of St. Thomas, Inc. v. Appleton*, 1988 U.S. Dist. LEXIS 18442, at *13 (D.V.I. December 28, 1988). When fashioning equitable relief a court acts with broad discretion. *See, e.g., United States v. Tabor Court Realty Corp.*, 803 F.2d 1288, 1306 (3d Cir. 1986).

The doctrine of unjust enrichment is typically invoked where the plaintiff seeks to recover for a benefit he conferred unto the defendant under an unconsummated or void contract.

---

*Id.*
   Summary judgment may be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* Once the moving party properly supports its motion for summary judgment, the non-moving party must establish a genuine issue of material fact in order to preclude a grant of summary judgment. *Id.* The evidence and inferences drawn therefrom must be viewed in the light most favorable to the nonmovant. *Id.* "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.*

*George Lombardi v. Victoria Wingo et al.*
D.C.Civ.App. No. 2002/0153
Memorandum Opinion
Page 9

*Steamfitters Local 420 v. Philip Morris, Inc.*, 171 F.3d 912, 936 (3d Cir. 1999). A person unjustly enriched at the expense of another must make restitution. Restatement (First) of Restitution §§ 1, 47 (1936); *In re Estate of McConnell*, 42 V.I. 43, 50 (V.I. Terr. Ct. 2000). The remedy of restitution for breach of contract is summarized in Restatement (Second) of Contracts § 373(1)(1981). The Restatement states in pertinent part that:

> . . . on breach by on-performance that gives rise to a claim for damages for total breach or on repudiation, the injured party is entitled to restitution for any benefit that he has conferred on the other party by way of part performance or reliance. As such, in the presence of breach, the injured party may seek to enforce the other party's broken promise, or in the alternative, seek restitution to prevent the unjust enrichment of the other party.

*Id.* at § 373 cmt. a.[11]

It is uncontested that in March of 1985, Suffecool and Lombardi entered into a contract for the purchase of Plot 83 Estate Slob for $19,000.00.(J.A. 7-8.) The parties assented for the contract to be executed by Lombardi's delivery of a quitclaim deed to Suffecool's designees, Victoria and Kyle Wingo, when Suffecool paid the final installment of the purchase price. It is also undisputed that Suffeccol paid the full contract price of $19,000.00.

---

[11] *See also* V.I. Code Ann. tit. 1, § 4 (2002).

*George Lombardi v. Victoria Wingo et al.*
D.C.Civ.App. No. 2002/0153
Memorandum Opinion
Page 10

As such, when Suffecool tendered the final installment payment, his duty of performance under the contract was discharged and Lombardi had a corresponding contractual duty to deliver a valid quitclaim deed. However, when the court voided the tax sale and certificate of purchase, Lombardi's interest in the property was extinguished and Lombardi had nothing to convey to the Wingos save a void quitclaim deed.

Restitution is appropriate when one confers upon another a benefit so as to obtain the performance of a promise given and the benefit expected in return was not received. *See* Restatement (First) of Restitution § 47(b)(1936); *see also In re Estate of McConnell*, 42 V.I. at 50. In this case, the trial court ordered Grobien and the Commissioner of Finance to reimburse Lombardi.[12] Such a refund was required under restitutionary principles, to prevent Finance and Grobien from being unjustly enriched.[13]

Likewise, Lombardi would undoubtedly be unjustly enriched

---

[12] The court ordered Grobien to pay Lombardi $556.89 in delinquent taxes that Lombardi paid at the tax sale. The trial court also ordered the Commissioner of Finance to reimburse Lombardi a combined total of $3,999.51, which represented the purchase price Lombardi paid the Government at the tax sale, plus 12% interest from the date of the tax sale to the date the certificate of purchase was deemed cancelled (June 29, 1983 to May 30, 1991).

[13] *See* Restatement (First) of Restitution §§ 15, 24 (2)(c) cmt. a (restitution is required where a party buys non-existent interest in land from one who acts by virtue of non-existent power or where transaction is void or voidable or where benefit conferred and party gains nothing in the bargain).

*George Lombardi v. Victoria Wingo et al.*
D.C.Civ.App. No. 2002/0153
Memorandum Opinion
Page 11

at Suffecool's and the Wingos' expense if he were allowed to retain moneys paid to him for the sale of land to which he had no right, title or interest.[14] *See* Restatement (First) of Restitution, §§ 1, 47 (1936); *In re Estate of McConnell*, 42 V.I. at 50.

In sum, the trial court's judgment restored the parties to their pre-sale position. Accordingly, because Lombardi has raised no genuine issue of material fact that convinces this Court that the trial court erred in ordering Lombardi to pay full restitution, we affirm the Superior Court's February 18, 1997 judgment.

**B.  Whether the trial court erred in applying a 9% interest rate to the $19,000 Judgment from February 18, 1997.**

Here, we are concerned with the applicability of a 9% interest rate on the $19,000.00 judgment awarded in favor of the Wingos and against Lombardi.[15] Specifically, the Court must

---

[14] *Flavor Pit*, 1988 U.S. Dist. LEXIS 18442, at* 13.

[15] In their briefs, Appellees Suffecool and Wingo argue that V.I. Code Ann. tit. 11, § 951(a)(1) controls the interest in question. However, V.I. Code Ann. tit. 11, § 951(a)(1) provides for payment of a *pre-judgment* interest rate on all monies which have become due. *See id.* The issue at bar concerns *post-judgment* interest, rather than *pre-judgment* interest. It is well established that V.I. Code Ann. tit. 5, § 426 governs *post-judgment* interest and is separate and apart from V.I. Code Ann. tit. 11, § 951(a)(1). *Davis-Richards v. Government of the Virgin Islands*, 33 V.I. 83, 87 (1996) (emphasis added). This distinction makes it clear that pre-judgment interest is legally applied and awarded once monies have become due, and without regard to the date of judgment..." *See Davis-Richards*, 33 V.I. at 87; V.I. Code Ann. tit. 11, § 951(a)(1). In contrast, post-judgment interest accrues from the date judgment

*George Lombardi v. Victoria Wingo et al.*
D.C.Civ.App. No. 2002/0153
Memorandum Opinion
Page 12

determine whether post-judgment interest should run from the Superior Court's February 18, 1997 interim judgment against Lombardi or from its September 6, 2002 final judgment resolving the claim as to all the parties. In its February 18, 2997 judgment, the Superior Court awarded post-judgment interest to the Appellees.[16] (App. 5.) The legal rate of post-judgment interest is governed by V.I. Code Ann. tit. 5, § 426 (2001). This section provides that: "[t]he rate of interest on judgments and decrees for the payment of money shall be 4% per annum." *Id.* However, § 426 is silent as to when the statutory rate of interest attaches in situations involving multiple parties and/or judgments.

The case at bar involves three parties and two judgments. The Wingos first sued Lombardi. Lombardi then sued the

---

is made final. See *id.*

[16] At the time of the trial court's February 18, 1997 order, the statutory rate of post-judgment interest was 9% per annum. See V.I. Code Ann. tit. 5, § 426 (1999). The court's February 1997, order commanded the interest to attach to the $19,000.00 judgment at the then-statutory 9% rate. However, this provision was amended by the Virgin Islands Legislature on Feb. 1, 2001. See Act No. 6391, Sess. L. 2000, p. 497. The amendment changed the statutory rate of post-judgment interest from 9%, to the current rate of 4%. See V.I. Code Ann. tit. 5, § 426 (1996); compare V.I. Code Ann. tit. 5, § 426 (1999); compare V.I. Code Ann. tit. 5, § 426 (2001); see also 5 V.I.C § 426 (2008). This temporal difference in the applicable statutory interest rate was not raised by either party in their briefs. However, we find it prudent to note that our determinations regarding whether post-judgment interest should run from the court's February 1997 judgment or its September 2002 judgment directly impacts not only the time period during which interest accrues, but also the applicable rate of interest that attaches under V.I. Code Ann. tit. 5, § 426.

*George Lombardi v. Victoria Wingo et al.*
D.C.Civ.App. No. 2002/0153
Memorandum Opinion
Page 13

Commissioner of Finance as a third-party defendant, from whom he sought indemnification. The first judgment issued on February 18, 1997, and disposed of the claim against Lombardi in favor of the Wingos. The second issued on September 6, 2002, and resolved Lombardi's third-party claim against the Commissioner of Finance.[17]

The finality of judgment regarding claims involving multiple parties is governed by Fed. R. Civ. P. 54(b), which states that:

> When an action presents more than one claim for relief — whether as a claim, counterclaim, crossclaim, or third-party claim — or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

*Id.*

Fed. R. Civ. P. 54(b) is buttressed against case law that illustrates that where the court directs the entry of judgment as to one or more, but fewer than all of the claims and parties, it must expressly direct entry of judgment for its order to qualify

---

[17] Lombardi argues that the Superior Court erred by beginning to apply the statutory rate of interest from the court's February 18, 1997, $19,000 judgment against him, rather than waiting to attach interest to its September 6, 2002 judgment, which resolved the claims as to all of the parties.

*George Lombardi v. Victoria Wingo et al.*
D.C.Civ.App. No. 2002/0153
Memorandum Opinion
Page 14

for Rule 54(b) certification as a "final judgment." *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427 (1956)(citations omitted). In other words, certification of a judgment under Rule 54(b) triggers, subject to review, all of the direct consequences of any final judgment. *See Johnson v. Orr*, 897 F.2d 128, 131 (3d Cir. 1990). It thus follows, that where multiple parties are concerned, post-judgment interest should attach when judgment is certified as final and appealable, and not before. Given the relative novelty of this issue in our jurisdiction, we look to our sister Circuits for clarification.

In *Hooks v. Washington*,[18] Thomas Hooks and his parents brought suit against the Washington Sheraton Corporation and the ITT Sheraton Corporation of America (Sheraton), the Paddock Swimming Pool Company, and the Paddock Pool Construction Company, Incorporated (Paddock), following a swimming pool accident at the Sheraton Park Hotel in Washington, D.C. Hooks alleged liability based on improper construction and maintenance of the pool. *Id.* Paddock filed third-party complaints against its insurers, Hanover Insurance Company and Continental Casualty Company, claiming that the insurers were obligated to indemnify Paddock

---

[18] *Hooks v. Washington Sheraton Corp.*, 206 U.S. App. D.C. 209 (D.C. Cir. 1980).

*George Lombardi v. Victoria Wingo et al.*
D.C.Civ.App. No. 2002/0153
Memorandum Opinion
Page 15

for any liability that might be incurred. *Id.* A jury trial was held, and the jury returned a verdict for $7,000,000.00 in favor of Hooks and against Sheraton. *Id.* The jury also absolved Paddock of any responsibility for the accident. *Id.*

On May 27, 1975, the same day as the jury verdict, the district court's clerk entered judgment on the verdict. *Id.* However, at the time of the verdict's entry, Paddock's third-party claims against its insurers for recovery of its litigation expenses had not been adjudicated, nor had a Rule 54(b) determination been made. *Id.* On July 30, 1976, the district court entered final judgment on Paddock's third-party claim against the insurance companies and also issued a Rule 54(b) determination in Hooks' favor. *Id.* However, Hooks sought to claim post-judgment interest from May 27, 1975, the day the jury verdict was entered against Sheraton, until July 30, 1976, the date which the trial court entered final judgment on all the claims. *Id.*

On appeal, the District of Columbia Court of Appeals held that Hooks could not recover post-judgment interest for the period prior to the resolution of Paddock's third-party claims. The Court reasoned that where a case involves multiple claims, finality of judgment concerning the attachment of post-judgment interest was governed by the terms of Rule 54(b). *Id.* Hence, subject to the provisions of Rule 54(b), post-judgment interest

cannot attach against *any* of the parties until the claims concerning *all* of the parties have been adjudicated and judgment is deemed final and ready for appeal. *See id.* (emphasis added); *see also Caputo v. U.S. Lines Co.*, 311 F.2d 413, 416-17 (2d Cir. 1963); *Imparato Stevedoring Corp. v. United States Lines Co.*, 374 U.S. 833(1963)(citations omitted); *see also Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1, 11-12,(1980)(citations omitted); *Redding & Co. v. Russwine Construction Corp.*, 135 U.S. App. D.C. 153 (D.C. Cir. 1969); 10 C. Wright & A. Miller, Federal Practice & Procedure § 2661, at 90-91 (1973).

Likewise, in this matter, post-judgment interest should not attach from the trial court's February 18, 1997 judgment against Lombardi because, when the 1997 judgment issued, Lombardi's third-party claim against Finance remained pending. It was only on September 6, 2002, that a Rule 54(b) certification issued, judgment became final and that the remaining claims in this litigation were adjudicated.

Moreover, until September 6, 2002, when final judgment issued, Lombardi was precluded from appealing the trial court's preliminary February 18, 1997 judgment.[19] It would thus be unjust

---

[19] Proper certification of a judgment as final as to fewer than all claims or parties is an essential prerequisite for appellate jurisdiction. *Genty v. Resolution Trust Corp.*, 937 F. Supp. 800 (3d. Cir. 1991). Absent such action by the Superior Court, the judgment is not appealable. *Distributive*,

*George Lombardi v. Victoria Wingo et al.*
D.C.Civ.App. No. 2002/0153
Memorandum Opinion
Page 17

for Lombardi to be penalized by the accrual of post-judgment statutory interest throughout the period when the Superior Court labored to resolve Lombardi's pending claim. Accordingly, we remand this matter concerning the trial court's award of interest. We do so with instructions that, subject to applicable law concerning the accrual of interest pending appeal, interest be awarded at the statutory rate of 4%, from September 6, 2002 - the date that judgment was certified as final and appealable.

**C.   Whether the Superior Court erred in denying Lombardi's claim for indemnification against the Commissioner of Finance.**

On September 6, 2002, by summary judgment, the Superior Court held that Lombardi was entitled to $2,043.11 with respect to a refund in excess of the tax sale plus interest in the amount of $1,956.46. The interest represented the 12% statutory rate from June 29, 1983 (date of sale) to May 30, 1991 (date certificate of purchase was deemed cancelled), for a total of

---

*Processing & Office Workers Union v. McKague*, 216 F.2d 153 (3d Cir. 1954); *See, e.g., Hayes v. Sealtest Foods Div. of Nat'l Dairy Prods. Corp.*, 396 F.2d 448 (3d Cir. 1968) (recognizing that after a Rule 54(b) certification and the entry of a final judgment, the time for appeal begins to run); *Government of Virgin Islands v. 2.6912 Acres of Land*, 396 F.2d 3 (3d Cir. 1968) (finding that failure to certify judgment under Rule 54(b) precludes res judicata effect); *Redding & Co. v. Russwine Constr. Corp.*, 135 U.S. App. D.C. 153, 417 F.2d 721 (D.C.Cir. 1969)(stating that Rule 54(b) has implications as to a judgment's finality for purposes of execution); *Johnson v. Orr*, 897 F.2d 128, 130-131 (3d Cir. 1990).

*George Lombardi v. Victoria Wingo et al.*
D.C.Civ.App. No. 2002/0153
Memorandum Opinion
Page 18

$3,999.51.[20] (J.A. 27.) However, the court denied Lombardi's claim for indemnification against Finance for the $19,000.00 purchase price he was previously ordered to reimburse to the Wingos. The court also denied Lombardi's requests for attorney's fees and other costs. (J.A. 22, 26, 27.) Lombardi argues that the trial court erred in this regard.

The property at issue was purchased by Lombardi at a tax sale. Generally, a purchaser at a tax sale is deemed to take title with notice - either actual or constructive - of, and subject to, any defects in title. *See* 8 C.J.S. Taxation § 1380 at 472; *see also* 4 V.I.Op.A.G. 41, 42 (1960)(purchaser acquires nothing in a voided tax sale, and the government has no obligation to the purchaser). Because tax records are open for public inspection and because a purchaser at a tax sale is deemed a volunteer in the payment of another's delinquent taxes, the purchaser is deemed to have notice of defects, and the doctrine of *caveat emptor* applied to preclude liability against the taxing authority. *See* 4 V.I.Op.A.G. 41, 42; 72 AM.JUR.2d *State and Local Taxation § 1036* (noting that purchaser assumes the risk of all irregularities and illegalities in the proceedings, and no liability is imposed on taxing authority for invalid tax sales,

---

[20] Our calculations show that there was a six cent error in the trial court's calculations. The true amount dues should have been $3,999.57, not $3,999.51.

*George Lombardi v. Victoria Wingo et al.*
D.C.Civ.App. No. 2002/0153
Memorandum Opinion
Page 19

absent statute to the contrary). However, *caveat emptor* is applied only where the irregularity or defect is discernible from the record. *See* 72 Am.Jur.2d § 1036. Thus, a purchaser at a tax sale which is later deemed invalid, should nonetheless, be restored to his pre-sale position. *Rivera v. Government of the V.I.*, 13 V.I. 42, 51-52. (D.V.I. App. Div. 1976).

On appeal, Lombardi bases his claim for indemnification against Finance on the law of contracts. However, contract law is based on principles favoring the restoring of a party to his original position. *See Christmas v. V.I. Water and Power Authority*, 527 F. Supp.843 (D.V.I. 1981). As noted earlier, the trial court had ordered Grobien to reimburse Lombardi the $556.89 he paid in Grobien's delinquent taxes and ordered the Commissioner of Finance to reimburse Lombardi the $3,999.51 that Lombardi paid at the tax sale for the purchase of the property. Therefore, Lombardi is not entitled to indemnification from Finance because he had been restored to his pre-sale position.

Moreover, where Lombardi advances no applicable law to otherwise guide our conclusions, we can find no justification in statute, logic or *stare decisis* to require Finance to indemnify Lombardi $19,000 that he negotiated for the sale of property for

*George Lombardi v. Victoria Wingo et al.*
D.C.Civ.App. No. 2002/0153
Memorandum Opinion
Page 20

which he had no interest.[21] Accordingly, we affirm the Superior Court's September 6, 2002 judgment and order.

## IV. CONCLUSION

For the aforementioned reasons, we remand this matter to this Superior Court with instructions to direct the attachment of statutory post-judgment interest from September 6, 2002 rather than February 18, 1997, at the applicable statutory interest rate of 4%.[22] In all other respects, we affirm the Superior Court's February 18, 1997 and September 6, 2002 opinions, orders and judgments.

---

[21] We note that there was no contractual indemnification agreement between the Commissioner of Finance and Lombardi. *See Manbodh v. Hess Oil V.I. Corp.*, 47 V.I. 267, 290 (V.I. Terr. Ct. 2005)(holding that, causes of action for contractual indemnification necessarily arise out of the contract at issue).

[22] Subject to applicable law concerning the accrual of interest pending appeal.